12042

### McCUTCHEON v. MAYBANK

#### (134 S. E., 217)

1. FACTORS.—Letter of shipper of cotton to consignee, who had made advancements to shipper, after learning of sale on failure to forward additional margins, *held* not such as to waive shipper's legal rights.

2. FACTORS.—Under contract to store cotton after making advancements to shipper thereon and requiring additional margins at option of consignee, consignee had right to sell cotton to protect himself from loss on shipper's failure to furnish margins required.

3. FACTORS.—Offer of consignee, who had made advancements to shipper, to recall sale made after shipper's failure to furnish margins, on shipper's complying with certain conditions, ·*held* without consideration, precluding shipper from complaining of failure to make offer good.

Before SHIPP, J., Charleston, April, 1925. Affirmed.

Action by J. B. McCutcheon against John F. Maybank. Judgment for defendant, and plaintiff appeals.

*Messrs. D. E. Ellerbe* and *P. H. Arrowsmith,* for appellant cite: *What defendant's answer is required to contain:* Code. Civ. Pro., 1922, Sec., 410. *Affirmative defense not provable under general denial:* 88 S. C., 178; 84 S. C., 119. *Cases distinguished:* 81 S. C., 332; 27 S. C., 235. *Waiver:* 114 S. C., 185; 40 Cyc., 256. *Estoppel in pais:* 111 S. C., 57; 40 Cyc., 263. *Waiver of advertisement before sale of pledged goods:* 129 S. C., 338; 78 S. C., 536.

*Messrs. Miller, Huger, Wilbur & Miller,* for respondent cite: *Necessity for pleading estoppel in defense: general rule:* 10 R. C. L., 842. *Same; South Carolina rule:* 95 S. C., 328; 93 S. C., 190; 81 S. C., 329; 27 S. C., 226. *Terms "waiver" and "estoppel" used interchangeably:* 27 R. C. L., 905. *Waiver need not be affirmatively pleaded:* 70 S. C., 75; 54 S. C., 599; 46 S. C., 541; 43 S. C., 26; 42 S. C., 14. *Trial of certain matters, without objection, as if in issue, may not be questioned on appeal:* 43 So., 726, 10 L. R. A.

(N. S.), 653; 141 F., 522; 70 F., 24; 91 Conn., 492; 91 A., 1067; 2 A. L. R., 1387; 113 N. Y., 450; 4 L. R. A., 145. *Defect of failure to plead estoppel waived by failure to object:* 94 S. C., 406; 12 S. C., 173; 175 Mo., 250; 75 S. W., 438; 97 A. S. R., 592; 138 Mo., 561; 38 S. W., 451; 26 Cal., 23; 85 Am. Dec., 157; 124 P., 704; 41 L. R. A. (N. S.), 529; 110 S. E., 510. *Waiver need not be supported by consideration:* 55 S. C., 1; 54 S. C., 599; 14 S. C., 247; 126 Wis., 110; 105 N. W., 563; 106 N. W., 485; 4 L. R. A. (N. S.), 231; 69 Min., 210; 72 N. W., 74; 90 Md., 136; 44 A., 1059; 81 N. Y., 410; 77 N. Y., 483; 33 Am. Rep., 651; 73 N. Y., 480; 29 L. R. A., 305. *Waiver depends on intention of party:* 106 N. W., 485; 4 L. R. A. (N S.), 231; 40 Cyc., 262. *"Consideration" defined:* 13 C. J., 311. *Waiver of expected benefit constitutes consideration:* 13 C. J., 318.

August 5, 1926.

The opinion of the Court was delivered by Mr. Justice Stabler.

This is an appeal from an order of his Honor, Judge Shipp, directing a verdict for the defendant.

The following statement of the pleadings appearing in the "Case" gives the contentions of the parties:

"The complaint alleges that during the year 1921 the plaintiff represented the defendant as a cotton buyer at Dillon, S. C.; that at times plaintiff purchased cotton at a price above the limits given him by the defendant and shipped such cotton to the defendant; that in case the defendant was unwilling to accept such cotton, he would carry it for the plaintiff's account, and when the cotton was sold, if it brought a lower price than that paid by the plaintiff, he would pay the defendant the loss, but if it brought a higher price defendant would pay the difference to the plaintiff; that on October 8, 1921, plaintiff purchased 150 bales of

cotton at 20½ cents, basis middling, which was above the limit given by the defendant, and shipped the same to the defendant, who notified the plaintiff that he would handle it for the plaintiff's account; that thereafter defendant called on plaintiff for margins, and plaintiff shipped additional cotton until he had in the defendant's possession 174 bales, aggregating 87,778 pounds; that thereafter cotton declined to about 15 cents, basis middling, but defendant was satisfied and made no further calls for margins; that later, as the market reacted, defendant called for additional margins, threatening to close out plaintiff's cotton if additional margins were not given; that defendant demanded that plaintiff either take over the cotton and repay the sum advanced by the defendant thereon, or that he have his bank guarantee the defendant against loss, saying that he would close out the cotton unless this were done by 2 p. m., May 1, 1922; that plaintiff, within the time limit so fixed arranged with the First National Bank of Dillon, S. C., to reimburse defendant for his advances, and the president of the said bank, Mr. R. S. Rodgers, telephoned the defendant on May 1, 1922, informing him of this fact, but defendant said that the cotton had been sold at noon on that day; that defendant thereafter accounted for the cotton sold, allowing the plaintiff credit at 16⅝ cents per pound, basis middling; that cotton has increased in value since May 1, 1922, at one time going above 35 cents a pound, basis middling, and plaintiff has been deprived of money he would have made but for such unwarranted sale by defendant; that by reason of the arbitrary conduct of defendant and his unlawful conversion of plaintiff's property, plaintiff has suffered damage in the sum of $20,000, and prays judgment for that amount with costs.

"The defendant's answer denies that plaintiff represented him as a cotton buyer, but alleges that plaintiff would ship cotton to the defendant and draw on him for the price as invoiced, and if such price was beyond defendant's limits,

he would carry the cotton for plaintiff if properly margined, but if the market declined and the plaintiff failed to furnish necessary margins upon demand, cotton would be closed out at the market, and the difference between the selling price and the amount advanced by the defendant to the plaintiff would be charged against or paid to the plaintiff, according as the cotton sold at a loss or a profit; that the 150 bales of cotton referred to in the complaint were not shipped on October 8, 1921, and cotton was not bringing 20½ cents, basis middling, on that date; that 24 bales of cotton were furnished as margins by the plaintiff, but were insufficient to protect defendant against a decline in the market; that the total weight of the cotton held for the plaintiff was as stated in the complaint; that defendant was at no time satisfied with the margins furnished and continued to call for further margins, threatening to close out plaintiff's cotton if they were not furnished; that upon the plaintiff's continued failure to furnish margins after repeated demands, defendant on April 28, 1922, furnished plaintiff with a complete statement of account and notified him that if he would have in the hands of the defendant not later than 12 o'clock, May 1, 1922, a certified check covering the balance due by the plaintiff and a letter from his bank stating that the bank would be responsible for any loss which might be incurred through decline in cotton, defendant would hold the cotton not later than September 20, 1922, and defendant notified plaintiff that should he fail to comply with these conditions, defendant would close him out; that defendant has no knowledge of any arrrangements between plaintiff and the First National Bank of Dillon, and denies that the defendant fixed 2 p. m. May 1, 1922, as the time limit; that defendant admits that some one declaring himself to be Rodgers, president of the First National Bank of Dillon, telephoned defendant on the afternoon of May 1, 1922, and was told that the cotton had been closed out that

day at 12 o'clock in accordance with defendant's letter of April 28, 1922, but defendant denies knowledge of any further communication with Rodgers on that day; that defendant sent a statement of account to the plaintiff for the cotton, allowing him 15⅝ cents per pound, basis middling, after May 1, 1922, but denies that plaintiff suffered loss by any fault of the defendant or that the defendant was guilty of any arbitrary conduct or unlawful conversion, and accordingly prays that the complaint be dismissed."

The case was tried in the Court of Common Pleas for Charleston County, April, 1925. The defendant moved, at the close of the plaintiff's testimony, for a nonsuit on the ground that the plaintiff had failed to prove facts which would warrant sending the case to the jury. This motion was overruled.

At the close of all the testimony the defendant moved for a directed verdict upon the following grounds:

"The defense moves for a directed verdict upon the ground that all the testimony shows, including the letter from the plaintiff himself, and even admitting, and we, of course, do not admit that there was an extension from 12 o'clock May 1st to 2 o'clock May 1st, the time in which Mr. McCutcheon was to do something, and all the testimony shows, including that letter that what McCutcheon was to do within that time, whether by 12 or 2, was to comply with the terms of John F. Maybank & Co.'s letter of April 28th, which letter prescribes that he should furnish a certified check and a letter from the bank guaranteeing Maybank & Co. from loss by holding the cotton, and even admitting that the time was extended from 12 to 2 there is not a word of testimony that the check was received or the letter furnished, and there is no testimony to show that there was any telephonic communication through McCutcheon or Rodgers to any one in the office of Maybank & Co., prior to 2 o'clock, Mr. Rodgers said he did not know the exact hour

that he called up, and there was some delay in the telephone connection, and the testimony of Mr. Maybank, Mr. Tamsberg, and Mr. John F. Maybank is that the conversation took place about 20 minutes after 2. The plaintiff makes much of the fact that Mr. Maybank said that the cotton was closed out at 12 o'clock, as a matter of fact the cotton was closed out on April 27th, so whether Maybank meant 12 or 2 saying the cotton was closed out is of no importance in the case whatever, because whatever McCutcheon was to do was to be done by 2, and all the testimony is that nothing was done except the telephone conversation, and that was after 2."

The Circuit Judge, after deliberation, granted the motion for a directed verdict upon the sole ground, as stated by him, that the letter from J. B. McCutcheon to John F. Maybank & Co., of date May 2, 1922, was "a legal consummation of the transaction, and that it was a waiver of any legal right" on the part of the plaintiff.

The letter referred to is as follows:

"Gentlemen: Yours of the 1st inst. to hand. We regret very much that it became necessary for you to close out our lot of cotton before we had the opportunity to remit the amount required as margins as per your agreement of the 28th ultimo, giving us until May the 1st, 12 o'clock and by special agreement over 'phone, extending agreement until 2 o'clock. You doubtless remember that we called you over the 'phone and explained fully to you that owing to conditions it would take time to get the president of the bank and his board of directors and for us to decide which was the better, whether to put up the additional margins and guarantee further losses or to reimburse you with full amount for the amount that you had advanced together with all expenses incurred up to date and take over the cotton warehouse receipts and hold same for our account. We decided to take over the cotton and assume all risks

ourselves.  When this decision was arrived at and arrangements fully made, our president got you over the 'phone as soon as possible and you informed him that you had already sold the cotton out at 12 o'clock.

"Now, gentlemen, you might have had the right to sell this cotton at 2 o'clock May 1st, but don't you think we should have had the benefit of market values prevailing at that date?  Yet your last letter indicates that you disposed of it on the 28th of April.  We were not trying to speculate in holding cotton at your expense.  You are fully cognizant of the fact that we had placed in your hands as margins twenty-seven bales of cotton and were holding this cotton only with a view of the market advancing enough to let us out.

"Our relations heretofore have been very pleasant and we hope that this incident, while very unfortunate for us, will not be the means of bringing about any estrangement in a business way and that we may know each other better and do a larger business together in the future and thus be enabled to retrieve at least a part of our losses.

"Very little cotton is being offered on this market at present.  When in the market command us."

The plaintiff now comes to this Court on appeal, and by his exceptions imputes error to the Circuit Judge in directing a verdict for the defendant upon the ground that the plaintiff by his letter above quoted waived any legal right that he might have had, and was a ratification and confirmation of the action of the defendant in closing out plaintiff's cotton.

The defendant also asks this Court to sustain the judgment of the Court below upon additional grounds, one of which is:

"That his Honor, the presiding Judge, erred in basing a refusal of the defendant's motion for a directed verdict in his favor upon the ground that there was evidence that

the defendant allowed the plaintiff until 2 o'clock on May 1, 1922, to comply with conditions upon which the defendant would continue to hold the plaintiff's cotton, and that the defendant nevertheless closed out plaintiff's cotton at 12 o'clock on May 1, 1922, thus working a conversion of the plaintiff's property; the error being that it clearly appears from the uncontradicted evidence that the plaintiff's cotton was sold on April 27, 1922, when the defendant had a legal right to sell it, and that nothing remained to be done by the defendant on May 1, 1922, with reference to the sale of the cotton."

The testimony tends to show that the plaintiff had stored with the defendant 174 bales of cotton, on which the defendant had advanced to the plaintiff a certain sum of money. The regular contract of the defendant, agreed to by the plaintiff, under which the cotton was held by the defendant, is as follows:

"(1) John F. Maybank & Co. will, subject to change of rates as hereinafter provided, store and insure all cotton received from the shipper at the rate of fifty cents. (50¢) per bale for the first (1st) month or any part thereof and fifty cents (50¢) per bale for each succeeding month or any part thereof; and for the purpose of getting storage room shall have the right to compress the cotton at the price of seventy-five cents (75¢) per bale, which charges shall be borne by the purchaser if the cotton is sold, and by the shipper, if the cotton is returned to him, or to his agent.

"(2) At the time said cotton is shipped John F. Maybank & Co. will furnish to the shipper the weight and grade upon which settlement will be effected when the shipper desires to dispose of the cotton.

"(3) John F. Maybank & Co. will advance to the shipper an amount to be determined by John F. Maybank & Co. at the time of shipment, which amount shall be payable by the shipper to John F. Maybank & Co. at the time of sale

or on or before May 1, 1922 (at which time this contract expires), with interest at the rate of eight per cent. (8%) together with all costs and charges upon the said cotton incurred under the terms of this agreement. The cotton so delivered by the shipper to John F. Maybank & Co. shall be held by them as security for the amount advanced and said costs and charges. Should the value of the cotton at any time during the life of this contract decline to an amount which in the opinion of John F. Maybank & Co. requires additional margining the shipper shall furnish to them this additional margin, the amount to be optional with John F. Maybank & Co. Should the shipper fail to pay the amount advanced together with costs and charges when called upon so to do at any time after May 1, 1922, or should the shipper fail at any time to furnish additional security to John F. Maybank & Co. when required so to do, then in either of said cases, John F. Maybank & Co. shall have the right to sell the said cotton for the best price obtainable therefor applying the proceeds of sale to the amount advanced with interest and costs and charges incurred.

"(4) The shipper may direct the sale of the said cotton at any time, in which case John F. Maybank & Co. will use their best efforts to sell the cotton at a price satisfactory to the shipper; or the shipper may at any time upon the payment of the amount advanced with interest and all costs and charges and a further charge of seventy-five cents (75¢) per bale for the assistance rendered in classing, weighing, and handling charges, demand a delivery of the cotton; but in that case John F. Maybank & Co. shall have the right to substitute cotton of equivalent weight and grade.

"(5) John F. Maybank & Co. desires it expressly understood that no cotton will be carried later than May 1, 1922, and the shipper so agrees to this term."

The testimony further tends to show that, on the decline of prices of cotton, demand for margins were frequently

5—S. C.—136.

made by the defendant upon the plaintiff, for the purpose of protecting the defendant from loss, but that the plaintiff failed to furnish the margins required of him. The defendant warned the plaintiff that he would have to sell the cotton without further notifying him unless the margins were put up as demanded. The testimony further discloses that on April 27, 1922, the defendant did dispose of the cotton of the plaintiff to William Almay of Boston, and on April 28, 1922, wrote the appellant to this effect:

"Dear Sir: We received a telegram from you on the 26 inst. reading:

" 'Bank is writing you. Thought everything satisfactory and will be.'

"To this telegram we did not reply but waited throughout the day and the next day for the letter referred to which has not to this time arrived.

"We have repeatedly called on you for margins on these 168 bales short cotton and 6 bales staples, stating that unless you supplied us with the necessary funds we would close out the cotton. You have procrastinated and kept putting us off, giving us one excuse and then another.

"The inclosed statement is complete and shows the amount that you are due us on this cotton. We are now willing to make you a further consideration, viz., that upon receipt of these returns if you will have in our hands not later than Monday, 12 o'clock, May first, a certified check covering this balance and a letter from the bank stating that they will be responsible for any loss which may be incurred through the decline in this cotton, we will recall these papers and continue to hold your cotton, provided same is closed out not later than September 20, 1922.

"Please bear in mind, as the writer stated to you over the telephone, that every bale of cotton which we carry we necessarily have to borrow from the bank, and we keep the bank supplied with their required margin, they only advanc-

ing 75% to 80% of its daily value. On your 174 bales of cotton we have put up of our own money to protect you $4,400.00."

It will be noted that in this letter the defendant offered, if the plaintiff would have in the hands of the defendant not later than Monday, at 12 o'clock, May 1, a certified check covering the balance due from the plaintiff and a letter from the bank stating that they would be responsible for any loss which might be incurred through decline in the price of cotton, to recall the papers and continue to hold the cotton, but not later than September 20, 1922. The plaintiff testified that he knew the cotton had been sold as indicated in the letter. The plaintiff claims, however, that the time was extended, by arrangements over the 'phone, from 12 o'clock on May 1 to 2 o'clock on the same day, while defendant contends that no such arrangements were made, and that no message having been received from the plaintiff by 12 o'clock, the whole matter was finally closed as by reference back to the sale of the cotton on April 27, of which the plaintiff had been apprised.

While the letter of the plaintiff of May 2 indicates a friendly attitude and contains no suggestions of legal action on his part, still we feel that its import is of such nature that the Court could not say as a matter of law, that the only inference to be drawn from it is that the plaintiff had waived his legal rights. However, from a careful consideration of the testimony, the contract under which the parties operated, and the undisputed fact of the entire transaction, we think a directed verdict would have been proper on the grounds advanced by the respondent as above set out.

2. The plaintiff having failed to furnish the margins required, the defendant had a right, under the conditions of the contract, to sell the cotton stored with him for the purpose of protecting himself from loss. The undisputed testimony is that the defendant did make such sale

of the cotton on the 27th day of April, 1922, and on the following day letter apprised the plaintiff of that fact, but offered to recall the papers upon the plaintiff's complying with certain conditions.

3        This offer, however, was without consideration and was made purely as a matter of accommodation to the plaintiff, who, therefore, cannot be heard to complain of any failure on the part of the defendant to make it good, if there was such failure. Under this view of the case, it is immaterial whether or not the time for the plaintiff to avail himself of the offer was extended from 12 o'clock to 2 o'clock of May 1. The cotton having been sold on April 27, there could be no possible conversion of same on May 1. The Circuit Judge should have granted the respondent's motion for a directed verdict on this ground.

For the reasons herein stated, the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES GARY, WATTS, COTHRAN and BLEASE concur.